# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JESSIE LEE McLENDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:18-cv-00293 |
| ) | |
| MONTGOMERY COUNTY JAIL, et al., ) | JUDGE CAMPBELL |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Jessie Lee McLendon, an inmate currently confined at the Montgomery County Jail in Clarksville, Tennessee, filed this *pro se* civil rights complaint under 42 U.S.C. § 1983 against the Montgomery County Jail and ABL. (Doc. No. 1.) Liberally construing the complaint, the Court will also consider any claims Plaintiff raises against the three individuals referred to in the narrative portion of the complaint—Lieutenant Stilts, Captain Pierce, and an unnamed Chaplain. Plaintiff has also filed an application to proceed *in forma pauperis*. (Doc. No. 2.)

## I.    Application to Proceed as a Pauper

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's *in forma pauperis* application that he lacks sufficient financial resources from which to pay the full filing fee in advance, Plaintiff's application (Doc. No. 2) will be granted. Plaintiff nonetheless remains responsible for paying the full $350.00 filing fee, so the fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

## II. Initial Review

The Court is required to conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The Court must construe a *pro se* plaintiff's complaint liberally, *United States v. Smotherman*, 838 F.3d 736 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A. Factual Allegations

Plaintiff alleges that in October 2016, he adopted religious beliefs that require him to observe certain dietary restrictions. (Doc. No. 1 at 5.) Plaintiff requested that his meals conform to these restrictions, and he was told there was a "3 month allowance" for the Chaplain to arrange an observant diet. (*Id.*) Plaintiff alleges that he "was switched a few weeks after." (*Id.*)

Plaintiff alleges that he showed the "protein facts" of his diet to ABL, the Chaplain, and prison officials, and requests meals with "proper vitamins, proteins, [and] sugars." (*Id.* at 4, 6.) Plaintiff also alleges that prison officials "are still in violation of his religious rights" and requests "proper religious materials." (*Id.* at 4–6.) Thus, Plaintiff essentially alleges that the Chaplain switched him to a diet that is not nutritionally adequate and still does not conform to his religious beliefs. (*Id.* at 4–6.) Plaintiff filed grievances from December 2016 until 2018, but "nothing was fixed." (*Id.* at 5.) Plaintiff also sent written complaints to two prison officials—Lieutenant Stilts and Captain Pierce—but they did not respond. (*Id.*) At the time Plaintiff filed the complaint, "nothing had changed." (*Id.*)

### B. Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### C. Discussion

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

#### 1. Montgomery County Jail and ABL

As an initial matter, the Montgomery County Jail is a prison facility, "not a 'person' or legal entity subject to suit under 42 U.S.C. § 1983." *McIntosh v. Camp Brighton*, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that

prison facilities are improper defendants under § 1983). Although the Court may liberally construe Plaintiff's reference to the Montgomery County Jail as an attempt to raise § 1983 claims against Montgomery County, doing so would be futile in this case. For Montgomery County to be liable under § 1983, Plaintiff must show that the county's "municipal policy or custom directly caused" the alleged deprivation of his constitutional rights. *Hadrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978)). Plaintiff does not allege that his dietary deficiencies are the result of Montgomery County's policy or custom. Accordingly, the Montgomery County Jail will be dismissed as a defendant.

Plaintiff also names ABL as a defendant. Although the complaint does not specifically describe who or what ABL actually is, the Court takes judicial notice that ABL is the entity contracted to provide food services for the Montgomery County Jail. *See Hull v. Davidson Cty. Sheriff's Office*, No. 3:16-cv-02920, 2017 WL 1322104, at *3 (M.D. Tenn. Apr. 3, 2017) (Crenshaw, J.) (citing *Cloyd v. Dulin*, No. 3:12-cv-1088, 2012 WL 5995234, at *5 n.1 (M.D. Tenn. Nov. 30, 2012) (Trauger, J.)). Additionally, the Court will presume for the purpose of initial review that ABL is a state actor under § 1983. *See id.* at *4 (applying the three tests used by the Sixth Circuit for determining if private conduct is attributable to the state and concluding that "Defendant A.B.L. is a state actor for purposes of § 1983"); *Lucas v. Aramark Corrs. Food Serv.*, No. 3:08CV-P310-H, 2010 WL 59194, at *1 n.2 (W.D. Ky. Jan. 5, 2010) (finding for the purpose of initial review that Aramark, another entity contracted to provide food services for prisons, is a state actor under § 1983).

Although ABL may be subject to suit under § 1983, the Court nevertheless concludes that Plaintiff has failed to state a claim against it. As a private entity acting under color of state law, ABL cannot be held vicariously liable for the actions of its employees. *Savoie v. Martin*, 673 F.3d

488, 494 (6th Cir. 2012) (citations omitted). Thus, just as with Montgomery County, Plaintiff must show that ABL had a "policy or custom" that "was the moving force behind the" alleged deprivation of Plaintiff's constitutional rights. *Id.* (quoting *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010)). Because Plaintiff does not allege that the deficiencies with his diet are the result of ABL's policy or custom, ABL will be dismissed.

### 2. Individual Defendants

Plaintiff alleges that Lieutenant Stilts and Captain Pierce did not respond to his written complaints regarding his diet. Supervisory officials can be personally liable under § 1983 "only for their own unconstitutional behavior," meaning that a supervisor must have "encouraged the specific incident of misconduct or in some other way directly participated in it." *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (citations omitted). "[S]imple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). To succeed on his claim, therefore, Plaintiff must show that Lieutenant Stilts and Captain Pierce "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Colvin*, 605 F.3d at 292 (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)). In this case, Stilts and Pierce's mere awareness of Plaintiff's complaints, and their failure to take any action in response to them, is not the type of encouragement or participation required for § 1983 liability. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988); *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998) ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'")). Indeed, Plaintiff does not allege that Stilts and Pierce are personally

involved in the administration of religious meals at the Montgomery County Jail at all. Thus, Lieutenant Stilts and Captain Pierce will be dismissed.

Plaintiff also alleges that an unnamed Chaplain was responsible for arranging his religiously observant diet, and that the Chaplain switched him to a nutritionally inadequate diet that still violates his religious beliefs. According to Plaintiff, these problems with his diet have persisted from late 2016 through the filing of the complaint.

The First Amendment protects a prisoner's free exercise of his or her religion, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Cruz v. Beto*, 405 U.S. 319 (1972)), including the right to an adequate diet that does not violate the prisoner's religious beliefs. *Colvin*, 605 F.3d at 290 (citing *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002). The right to a religious diet, however, is not absolute, as "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone*, 482 at 348 (citations omitted). "If [a] prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Alexander*, 31 F. App'x at 179 (citations omitted). Because Plaintiff has alleged that his diet does not comply with his religious beliefs and is not nutritionally adequate, the Court will allow Plaintiff's First Amendment free-exercise claim against the unnamed Chaplain to proceed at this stage.

In addition, the Eighth Amendment protects convicted inmates from the "unnecessary and wanton infliction of pain." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (citation omitted). This imposes a duty on prison officials to "provide humane conditions of confinement" by "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted). For food to be constitutionally adequate, it need only

be sufficient to "maintain normal health." *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977). An Eighth Amendment claim for inadequate conditions of confinement has both an objective and subjective component. *Russell v. Wilkinson*, 79 F. App'x 175, 176 (6th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–302 (1991)). Thus, Plaintiff must show that he faced an objectively sufficiently serious risk to his health or safety, and that the defendant had the subjective state of mind of "deliberate indifference"—that is, that the defendant knowingly disregarding that objectively serious risk. *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 737–38 (6th Cir. 2015).

Here, Plaintiff alleges that the unnamed Chaplain switched him to a diet that is not nutritionally adequate, and that Plaintiff has been forced to eat this nutritionally inadequate diet for over one year. At this stage, these allegations are sufficient to draw the inference that Plaintiff's diet poses an objectively sufficiently serious risk to his health, even though there are not any details regarding his diet's specific nutritional deficiencies. Additionally, for the purpose of initial review, Plaintiff's allegations reflect that that the unnamed Chaplain was deliberately indifferent to Plaintiff's health risk. First, the Chaplain knew that Plaintiff's diet was nutritionally inadequate because Plaintiff showed Chaplain the "protein facts" of his diet, and second, the Chaplain disregarded this information by not adjusting Plaintiff's diet. Importantly, Plaintiff's Eighth Amendment claim is not based on his displeasure with the composition, preparation, or quality of his diet. *See Cunningham*, 567 F.2d at 659–60 (stating that complaints "about the preparation or quality of prison food . . . [are] generally far removed from Eighth Amendment concerns.") (citation omitted). Rather, Plaintiff alleges that the Chaplain has not satisfied his duty to provide Plaintiff with a diet sufficient to maintain normal health. At this juncture, therefore, the Court

7

concludes that Plaintiff has stated an Eighth Amendment conditions-of-confinement claim against the unnamed Chaplain at Montgomery County Jail.

### 3. RLUIPA Claim

Finally, Plaintiff alleges that prison officials "are still in violation of his religious rights" and requests "proper religious materials." Construing the complaint liberally, Plaintiff may be asserting that prison officials have violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, by preventing him from adhering to dietary restrictions consistent with his religion. The RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (footnote omitted). Under the RLUIPA, the government shall not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability," 42 U.S.C. § 2000cc-1(a), "unless the government can show (1) that the imposition of the burden 'is in furtherance of a compelling governmental interest,' and (2) the burden furthers that interest by use of the 'least restrictive means.'" *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010) (quoting 42 U.S.C. § 2000cc-1(a)(1)–(2)).

Although the full picture of Plaintiff's diet and its effect on his practice of religion are unclear from the complaint, Plaintiff's allegations reflect that prison officials may have placed Plaintiff on a diet that substantially burdens his exercise of religion. For the purpose of initial review, therefore, the Court concludes that Plaintiff has stated a RLUIPA claim against and the unnamed Chaplain responsible for arranging his religious diet at the Montgomery County Jail.

## III. Conclusion

For these reasons, Plaintiff's application to proceed *in forma pauperis* (Doc. No. 2) will be granted. The claims against Montgomery County Jail, ABL, Lieutenant Stilts, and Captain Pierce will be dismissed. Plaintiff's First Amendment free-exercise claim, Eighth Amendment conditions-of-confinement claim, and RLUIPA claim against the unnamed Chaplain at the Montgomery County Jail will be referred to the Magistrate Judge for further proceedings in accordance with the accompanying Order.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE